UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK PINNOCK<br><br>Defendant. | )<br>)<br>)<br>)<br>) Criminal No. 23-cr-10204-NMG<br>)<br>)<br>)<br>)<br>) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Mark Pinnock was charged by Information with obstructing justice in violation of 18 U.S.C. §1512(b)(1) and is scheduled to be sentenced on January 5, 2024. Pinnock was on supervised release at the time of the instant offense and has an outstanding supervised release revocation matter based upon the conduct set forth in the Information. *See United States v. Mark Pinnock*, 14-cr-10179-2-NMG. He pled guilty to the Information on October 4, 2023. Dkt 11. In the plea agreement, Pinnock agreed to stipulate to the violations contained in the supervised release petition. *See* Dkt 9.

The government respectfully requests that the Court accept the Rule 11(c)(1)(C) plea agreement and sentence Pinnock to 33 months of incarceration, three years of supervised release (with the conditions as set forth in the plea agreement), and to pay a $100 special assessment. *See* Dkt 9.[1] The government also requests that the Court recommend the defendant be designated to an institution where he can receive sex offender treatment. *See* PSR at p. 22.

**I.    Background and Guidelines**

In 2022, Pinnock was on supervised release for his 2014 sex trafficking case before this

---

[1] The government respectfully requests that the sentence of 33 months includes a sentence of 6-12 months for the defendant's supervised release violations.

1

Court.² PSR at ¶9. He was working as an Amazon driver. *Id.* On July 21, 2022, a victim reported to the Brockton Police Department that an Amazon driver, later identified as Pinnock, had exposed his penis to her while she was working at a condominium complex as a cleaner. *Id.* at ¶10. On August 1, 2022, the United States Probation Office sought to revoke Pinnock's term of supervised release based on his commission of a new state crime (open and gross lewdness and lascivious behavior). *Id.*

On August 23, 2022, a United States Magistrate Judge found probable cause to believe that Pinnock violated his conditions of supervised release and, over the government's objection, ordered him released on conditions that included home incarceration with GPS monitoring. *Id.* at ¶11. A final revocation hearing was scheduled by this Court for November 4, 2022. *Id.* at ¶12.

On October 28, 2022, one week before his revocation hearing and while confined to his residence, Pinnock directed another individual, co-conspirator 1 to go to the Brockton condominium at a time when he knew that the victim would be working. *Id.* at ¶13. Pinnock's co-conspirator falsely told another individual working at the condominium complex that he worked for the state. PSR at ¶14. The co-conspirator then confronted that individual and the victim with a cell phone in his hand. *Id.* A Spanish speaker on the phone directed both the victim and that individual not to go to court. *Id.* The co-conspirator reportedly stood with his hand in his pocket in a threatening manner, as if he had something in it. *Id.*

On November 1, 2022, while confined to his residence, Pinnock used an encrypted messaging application to send an anonymous text message to a security officer working at the Brockton condominium. *Id.* at ¶15. The text message said to "let the cleaning lady know" that she

---

² In December of 2014, Pinnock was sentenced to 96 months incarceration. *United States v. Mark Pinnock*, 14-cr-10179-2-NMG, Dkt 101.

would be arrested by ICE if she went to court.  *Id.*  Additionally on November 1 and 2, 2022 Pinnock made three calls to the ICE tipline in an attempt to have the victim removed from the United States in order to prevent her from testifying in his revocation matter.  *Id.* at ¶¶16-17.  Among other things, Pinnock noted he heard the victim was gang affiliated.  *Id.* at ¶19.

The government and the parties agree with the Guidelines as calculated by Probation in the PSR and plea agreement, resulting in an offense level of 12, and a guidelines sentencing range of 12-18 months, because Pinnock is in CHC II.  PSR, at ¶¶24-32; Dkt 12.  Notably, the Guidelines on Pinnock's underlying supervised release offense are 6-12 months, as set forth in the plea agreement.  Dkt 9, at ¶4.

**II.    Arguments**

The Court should accept the plea agreement.  The parties' recommended sentence—33 months incarceration—is a reasonable and just outcome that is sufficient but not greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553(a) for this defendant.  Here, when added, the high-end guidelines for both the Information and the supervised release offense are 30 months.

The nature and circumstances of the offense and the defendant's history and characteristics necessitate a significant incarcerative sentence.  Pinnock has spent most—nearly all—of the last decade of his life in custody.  When he was released from prison, he got a job as an Amazon driver.  But then while on the job, he chose to sexually victimize a woman who worked as a custodian at a condominium complex—because he thought he could do so without consequence.  Instead of seeking treatment or accepting any responsibility whatsoever, he doubled down when he got caught.  Through his own actions and that of his co-conspirator's, he attempted to ensure that the victim not appear in Court at his final supervised release revocation.

This crime was personal and it was calculated. Pinnock knew what he was doing was wrong. That is why he used an encrypted text messaging application to deliver the explicit threat that the victim should not go to Court. That is why he enlisted the help of a co-conspirator to physically go to the condominium complex where the victim worked—instead of going himself. He did so because he knew that if he sent someone else, he could attempt to maintain plausible deniability. The nature of Pinnock's crime makes clear that he believed that he was above the law. In fact, he was so emboldened that he called ICE on a recorded line, in hopes that his true identity wouldn't be discovered, or that no one would care to do anything about it if it was.

There is also a significant need for both general and specific deterrence. By imposing a 33-month sentence, this Court will send a message, both to this defendant and to those contemplating witness tampering that callous disrespect for the gravity of federal court proceedings will not be tolerated. Obstruction offenses occur all too often. For any individual weighing his options before obstructing a federal investigation or a revocation proceeding, the separate prosecution of Pinnock for an obstruction offense will have a clear deterrent effect as compared to a probation revocation.

### III.    Conclusion

For all of these reasons and the reasons to be further discussed at the sentencing hearing, the government respectfully requests that the Court impose a sentence of 33 months incarceration, to be followed by three years of supervised release, and require that Pinnock pay a $100 special assessment. The government also requests that the Court recommend Pinnock be designated to an institution where he can receive sex offender treatment.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

by: /s/Mackenzie A. Queenin
MACKENZIE A. QUEENIN
Assistant U.S. Attorney

**Certificate of Service**

    I, Mackenzie A. Queenin, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: January 1, 2024            */s/ Mackenzie A. Queenin*
                                                            Mackenzie A. Queenin